1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8
9

| | |
|---|---|
| CYNTHIA MARIE IGASAN,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Case No.  1:23-cv-00031-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION<br>FOR SUMMARY JUDGMENT; DIRECTING<br>CLERK OF THE COURT TO ENTER<br>JUDGMENT IN FAVOR OF DEFENDANT<br>COMMISSIONER OF SOCIAL SECURITY0<br>AND AGAINST PLAINTIFF CYNTHIA<br>MARIE IGASAN AND TO CLOSE THIS<br>ACTION<br><br>(ECF Nos. 15, 16, 18) |

## I.

## INTRODUCTION

Cynthia Marie Igasan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for further proceedings, arguing the Administrative Law Judge improperly discounted the opinion of Dr. Nooshin Maolemi, and the decision is not supported by substantial evidence and free of legal error.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 7, 9.)

1

For the reasons explained herein, Plaintiff's Social Security appeal shall be denied.

## II.

## BACKGROUND

### A.      Procedural History

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on September 21, 2017.  (AR 128.)  Plaintiff's application was initially denied on January 17, 2018, and denied upon reconsideration on April 16, 2018.  (AR 109-127, 129-146.)  Plaintiff requested and received a hearing before Administrative Law Judge Erin Justice ("the ALJ").  Plaintiff appeared for a telephonic hearing on January 29, 2020.  (AR 82-108.)  On February 12, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 148-64.)  On September 29, 2020, the appeals counsel sent this matter back to the ALJ to evaluate Plaintiff's claim from October 19, 2016 through September 30, 2019, the date last insured; evaluate Plaintiff's carpal tunnel syndrome at Step 2; give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rational with specific references to evidence in the record in support of the assessed limitations; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base.  (AR 171-75.)

Following remand, Plaintiff appeared for a telephonic hearing on July 8, 2021, before ALJ Shiva Bozarth.  (AR 40-81.)  On September 15, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 16-31.)  On September 19, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 5-7.)

### B.      The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, September 5, 2021:

1.  Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2019.

2.  Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 19, 2016, through her date last insured of September 30, 2019.

3. Through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the cervical, lumbar, and thoracic spines; degenerative joint disease; essential tremor; rheumatoid arthritis; carpal tunnel syndrome; small fiber neuropathy; fibromyalgia; and obesity.

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

5. After careful consideration of the entire record, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform a reduced range of light work as defined in 20 CFR § 404.1567(b). Specifically, Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk for 6 hours in an 8-hour day.  Plaintiff can never climb ladders, ropes, or scaffolds; but can occasionally climb ramps and stairs.  She can occasionally stoop, kneel, crouch, or crawl. In addition, she can never work at unprotected heights or around fast-moving machinery. Plaintiff can never reach with the non-dominant upper extremity; but can frequently reach with the dominant upper extremity.  Further, Plaintiff can frequently handle, finger, or feel with the bilateral upper extremity.

6. Through the date last insured, Plaintiff was capable of performing past relevant work as an eligibility worker, caseworker, salesclerk, furniture salesperson, and jewelry salesperson.  This work did not require the performance of work-related activities precluded by Plaintiffs residual functional capacity.

7. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 19, 2016, the alleged onset date, through September 30, 2019, the date last insured.

(AR 21-30.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must

show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971,

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks disability insurance benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.     Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to properly consider the opinion of Dr. Nooshin Maolemi and the rationale provided to reject his imposed restrictions is legally insufficient and internally inconsistent.  (Mot. for Summary Judgment ("Mot.") 24, EC No. 15.)  Plaintiff argues

that the restrictions imposed by Dr. Maolemi were not accommodated in the RFC and the ALJ did not provide adequate rationale for finding his opinion to be unpersuasive and the analysis contains inadequacies that frustrate meaningful review.  (Mot. 25.)  Further, Plaintiff contends that the ALJ's failure to discuss significant probative evidence that was contrary to the findings is a mischaracterization of the evidence.  (Mot. 25.)  Plaintiff asserts that the ALJ focused on benign findings in the record and the actual record presents a more serious picture.  (Mot. 26.)  Specifically, Plaintiff alleges that the ALJ cited solely normal findings and ignored a plethora of objective imaging and physical examinations that document abnormal findings.  (AR 26.)  Plaintiff argues that the ALJ engaged in lay interpretation of the raw medical evidence and the error is harmful because it would have consequence in the ultimate non-disability determination.  (Mot. 29.)  Plaintiff requests that this action be remanded for further proceedings.  (Mot. 30.)

Defendant counters that the ALJ considered a variety of medical opinions and prior administrative findings and determined that several were persuasive including the opinion of Dr. Damania who opined that Plaintiff was capable of medium work, but the ALJ assessed additional limitations due to abnormal examination findings related to Plaintiff's cervical spine, hip pain, mild tremor of the hand and face, and decreased sensation of the lower extremity.  (Def.'s Responsive Brief ("Opp.") 5, ECF No. 17.)  Defendant contends that substantial evidence supports the ALJ's analysis of Dr. Moalemi's questionnaire.  (Opp. 7.)  Defendant asserts that the ALJ found Dr. Moalemi's opinion was not supported by a detailed explanation or objective evidence in the record.  (Opp. 7.)  Defendant also argues that Dr. Moalemi cautioned that his response that Plaintiff was only capable of low stress work was based on Plaintiff's subjective complaints and Dr. Moalemi did not have training in occupational or disability medicine.  (Opp. 7.)  Defendant contends that Dr. Moalemi's deference to Plaintiff's subjective assessment of her abilities disqualified the questionnaire from the definition of a medical opinion.  (Opp. 7.)  Defendant argues that the ALJ accurately discussed the imaging studies of Plaintiff's lumbar, thoracic, and cervical spines, as well as her hip pain.  (Opp. 11.)  Further, Defendant asserts that the ALJ discussed evidence that was inconsistent with Dr. Moalemi's opinion.  (Opp. 11.)  Defendant contends that in compliance with the regulations, the ALJ considered the evidence in the record as a whole and did not cherry pick

1    only those examination findings that tended to show Plaintiff was not more limited.  (Opp. 11.)

2    Defendant states that the ALJ reasonably found Dr. Moalemi's questionnaire was not supported

3    and the extreme limitations assessed were inconsistent with other evidence.  (Opp. 12.)  Defendant

4    requests that the ALJ's opinion be affirmed.  (Opp. 12.)

5        Plaintiff replies that the ALJ did not accommodate the restrictions assessed by Dr. Maolemi

6    and did not provide an adequate rationale for finding his opinion to be unpersuasive.  (Reply 2, ECF

7    No. 18.)  Plaintiff argues that Defendant is attempting to cure the deficiencies in the ALJ's decision

8    by raising issues not cited by the ALJ and this is nothing more than post-hoc rationalization that is

9    not allowed.  (Reply 3.)  Further, Plaintiff contends that the fact that Dr. Maolemi's opinion was on

10   a check box form is not a reason to reject the opinion because he identified clinical findings and

11   objective signs that support his assessed limitations.  (Reply 3.)  Finally, Plaintiff asserts that

12   Defendant ignores that factual findings must be supported by substantial evidence and were reached

13   by application of the correct legal standard.  (Reply 4.)  Plaintiff contends that the ALJ made legal

14   errors and this matter should be remanded.  (Reply 5.)

15       **A.    Weighing Medical Opinions and Prior Administrative Medical Findings**

16       Where, as here, a claim is filed after March 27, 2017, the revised Social Security

17   Administration regulations apply to the ALJ's consideration of the medical evidence.  See

18   Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-

19   01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated

20   regulations, the agency "will not defer or give any specific evidentiary weight, including controlling

21   weight, to any medical opinion(s) or prior administrative medical finding(s), including those from

22   [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new

23   regulations require an ALJ to apply the same factors to all medical sources when considering

24   medical opinions, and no longer mandate particularized procedures that the ALJ must follow in

25   considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required

26   to articulate how [he] considered each medical opinion or prior administrative medical finding from

27   one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As

28   recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations

8

abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record," where contradictory evidence is present.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how he considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how he considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d). Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May

1   14, 2021).

2       **B.     ALJ's Opinion**

3       The ALJ considered that on January 21, 2017, imaging of Plaintiff's lumbar spine was taken

4   and revealed disc bulge at L4-5, L5-S1 anterolisthesis, arthropathy, and ligamentum flavum

5   hypertrophy.  (AR 26, 588, 592-93, 691-92.)  Thereafter in mid-2017, it is noted that imaging of

6   Plaintiff's right hip noted a possible labral tear.  (AR 26, 582.)  Treatment notes show that medical

7   personnel advised Plaintiff that she may need to undergo a hip arthroscopy.  (AR 26, 582.)  In June

8   2017, imaging of Plaintiff's cervical and thoracic spine were also taken and noted degenerative

9   changes.  (AR 26, 594, 595.)  On November 29, 2016, the record shows that medical personnel

10  within neurosurgery were consulted about her hip and advised no surgical intervention was needed,

11  but physical therapy was recommended.  (AR 26, 616.)

12      On August 31, 2017, additional imaging of Plaintiff's cervical spine was taken and noted

13  anterior ligament calcification with minimal spondylosis and no acute process seen.[5]  (AR 26, 682.)

14  Imaging of her thoracic spine noted minimal disc bulges and anterolisthesis, and no canal stenosis

15  or foraminal narrowing. (AR 26, 684.)  The ALJ noted that treatment notes on May 2, 2017, show

16  that Plaintiff also complained of generalized tenderness.[6]  (AR 26, 1160.)

17      At times, Plaintiff's examinations noted bilateral cervical trigger points, decreased cervical

18  range of motion, an antalgic gait, positive straight leg raises, decreased range of motion and

19  strength, trigger points, edema and joint hypertrophy, painful hip range of motion, right hip tender

20  to palpation, paraspinal tenderness, decreased spinal range of motion, mild tremor of hand and face,

21  and lower extremity decreased sensation.  (AR 27, 566, 582, 645, 1132, 1145, 1150, 1153, 1160,

22

23  [5] The ALJ also cited to a July 27, 2017 MRI of Plaintiff's cervical spine without detailing the findings.  The MRI
    showed a small left paracentral disc extrusion at C3-C4 with mild cord impingement and mild cord edema; small
24  disc protrusions at C5-C6, C6-C7, C7-TJ with minimal cord impingement and without cord edema; no gross
    demyelinating cord lesions; and nonspecific mildly enlarged bilateral cervical nodes which may be reactive. (AR
25  685.)

26  [6] At this visit, Plaintiff complained of lower back pain with the pain radiating to her bilateral hips and down to her
    lower extremities.  (AR 1159.)  She also complained of localized neck pain and mild back pain.  (AR 1159.)  She
27  described the intensity as severe in her lower back, neck mid back, and hips and legs.  (AR 1159.)  She described
    constant, burning, aches, radiates, sharp and stabbing, comes and goes, worse in the a.m., worse in the p.m.  Worse
28  since it began.  (AR 1159.)  However, the ALJ considered the examination findings in discussing the abnormal
    examination findings below.

1262, 1462, 1579, 1639, 1860, 1873, 2857, 2877, 3107-08.)

However, Plaintiff's examinations also noted a normal gait; full cervical range of motion; no cervical tenderness; negative straight leg raises; no clubbing, cyanosis, or edema; normal range of motion; normal strength in the upper and lower extremities; no hip instability, swelling or deformity; normal muscle tone; no swelling or deformity of joints; intact sensation; and normal grip strength.  (AR 27, 582, 587, 589, 636, 650, 653, 676, 697, 901, 1125, 1279, 1420-21, 1873, 1885, 2423-24, 2444-45, 2721, 2733, 2877.)  The ALJ considered that at the hearing, Plaintiff testified that she continued to experience tremors and pain in her hands, back, and hip. She explained that she had difficulty grasping items and could not sit, stand, or walk for prolonged periods. Additionally, Plaintiff testified that she could not lift half a gallon of milk, and cold temperatures caused pain and swelling in her hands and joints.  She described her pain as an 8 on a 10-point scale and noted that she only had one to two good days a week. The ALJ accommodated Plaintiff's symptoms and impairments by limiting her to light work, along with the postural, reaching, manipulative, and environmental limitations detailed in the residual functional capacity.  (AR 27.)

The ALJ found that the record reflects that Plaintiff testified that she continued to experience significant pain and limitations stemming from her impairments, but as discussed above, her examinations generally noted normal findings.  (AR 28, 582, 589, 636, 645, 653, 676, 697, 901, 961, 1135, 1279, 1421, 1873, 1885, 2423, 2444, 2721, 2733, 2877.)  The ALJ found the medical evidence concerning her impairment provides only limited support for Plaintiff's allegations, and suggests that her symptoms are not as severe, persistent, or limiting as she has alleged.  Further, the ALJ found that her most recent treatment notes continue to reflect a disparity between her alleged limitations and clinical findings.  (AR 28, 2423, 2444, 2588, 2721, 2731.)

The ALJ considered the medical opinions and prior administrative medical findings.  He found that the opinions of the State agency medical consultants, Laurence Ligon, M.D., and Julie Chu, M.D., were partially persuasive.  (AR 28.)  The ALJ found the opinion of Dr. Ligon at the initial level (AR 122-25) was unpersuasive because the assessed limitations were not supported by the evidence that was available at the time of the assessment.  Namely, exams noting full cervical range of motion, no cervical tenderness, no clubbing or edema, normal strength and tone, no hip

instability or deformity, normal spinal range of motion, and intact sensation.  (AR 28, 582, 587, 589, 636, 645, 653, 676, 697, 901, 962.)  Further, the ALJ found that the assessed limitations were not consistent with the record as a whole, which continued to note the same.  (AR 28, 1135-1136, 1279, 1421, 1873, 1885, 2423, 2444, 2721, 2733, 2877.)   The ALJ also found that subsequent treatment notes revealing normal respiratory exams, decreased sensation, and hand tremors support the finding of less environmental limitations and more manipulative and postural limitations.  (AR 28, 1160, 1583, 2423-24, 2877.)

The ALJ found that the opinion of Dr. Chu at the reconsideration level was more persuasive. (AR 28, 141-44.)  The opinion was supported by the evidence that was available at the time of the assessment.  Dr. Chu assessed limitations based upon Plaintiff's largely normal exams, while still accounting for exams noting an antalgic gait, decreased range of motion, positive straight leg raises, decreased strength and painful range of motion.  (AR 28, 567, 582, 645.)  The ALJ found the opinion to be consistent with the record as a whole which continued to note the same.  However, the ALJ found that the record as a whole, including Plaintiff's subjective complaints and exams noting hand tremors, decreased sensation, edema, and joint hypertrophy, support the finding that she has more postural and manipulative limitations than those assessed.  (AR 28, 1160, 2857, and hearing testimony.)

The ALJ considered that Plaintiff underwent a physical examination with Dr. Damania in June of 2019, and found the opinion to be persuasive.  (AR 29, 1132-42).  The opinion is supported by a detailed explanation and Dr. Damania's objective findings.  Dr. Damania assessed limitations based largely upon Plaintiff's subjective complaints and the opinion was found to be generally consistent with the record as a whole.  However, the ALJ assessed additional limitations to account for Plaintiff's examinations noting bilateral cervical trigger points, decreased cervical range of motion, an antalgic gait, positive straight leg raises, decreased range of motion and strength, trigger points, edema and joint hypertrophy, painful hip range of motion, right hip tender to palpation, paraspinal tenderness, decreased spinal range of motion, mild tremor of hand and face, and lower extremity decreased sensation.  (AR 29, 567, 582, 645, 1135, 1145, 1150, 1160, 1263, 1462, 1583, 1639, 1860, 1873, 2857, 2877, 3107.)

The ALJ also considered that in November of 2017, Dr. Moalemi provided functional limitations which he found to be unpersuasive. (AR 29, 1451-53.) The ALJ found the opinion was not supported by a detailed explanation or objective findings and additionally, the extreme limitations assessed were not consistent with the record as a whole which largely noted a normal gait; full cervical range of motion; no cervical tenderness; negative straight leg raises; no clubbing, cyanosis, or edema; normal range of motion; normal strength in the upper and lower extremities; no hip instability, swelling or deformity; normal muscle tone; no swelling or deformity of joints; intact sensation; and normal grip strength. (AR 29, 582, 587, 589, 636, 645, 653, 676, 697, 901, 961, 1135, 1279, 1421, 1873, 1885, 2423, 2444, 2721, 2733, 2877.)

**C.     Medical Record**

The medical record the ALJ addressed in the opinion is as follows.

Plaintiff was seen for a neurosurgery consult by Dr. Taggard on October 20, 2016, complaining of continued back, flank, and hip pain. (AR 900.) Examination notes bilateral upper extremities have 5/5 motor strength and sensory is intact to light touch. Sensory in the bilateral lower extremities was intact to light touch. There was pain into the back with proximal movement. Hip flex was 4/5, knee extension and flex were 4+/5; dorsiflex, plantarflex and EHL were 5/5 bilaterally. MRI of the spine showed lumbar facet joint effusions. (AR 901.) The lumbar joint effusions were found to be nonspecific and most likely chronic, degenerative changes and inflammation. No surgical intervention was required. (AR 902.)

On November 10, 2016, Plaintiff was seen for an initial physical therapy assessment reporting that she has 10/10 back and groin pain since October 15, 2016. She is noted to show severe limitations in range of motion, strength, and functional mobility to perform walking, standing, sitting, transfer to a car, and lay supine. Authorization was requested for a walker and tens unit to assist with pain relief and mobility. (AR 566.)

Plaintiff was seen for a consultation with Dr. Ma on February 9, 2017. (AR 695.) Examination of the neck showed no tenderness and no decrease in suppleness. Musculoskeletal exam noted normal appearance of the fingers. Gait and stance were normal. (AR 697.) She was deemed to be a good candidate for bariatric surgery. (AR 698.)

Plaintiff was seen by Dr. Maolemi on January 27, 2017, for severe low back pain and requested disability paperwork be filled out.  She had an MRI of the lumbar spine which showed L4-5 and L5-S1 joint effusion.   Neurosurgery was consulted and they advised no surgical intervention.  She also had an MRI of the right hip that showed a questionable labral tear.  She stated her pain was 7 out of 10 and she was ambulatory.  Examination notes that her back was tender to palpation over the lumbar-sacral spine and straight leg raising test was positive bilaterally.  She had a normal gait; sensory exam was intact, and she had normal motor strength to the lower extremities.  (AR 636.)

On May 2, 2017, Plaintiff was seen for chronic pain management by Dr. Grandhe.  (AR 588-90, 1159-61.)  She complained of lower back pain radiating into the bilateral hips and down to her lower left extremity as well as localized neck pain and mid back pain. (AR 1159.)  Musculoskeletal examination notes upper and lower extremity range of motion was within normal limits. Tenderness was present in the cervical spine. Mild paraspinal tenderness was present with rigidity and guarding. Tenderness was present in the thoracic spine. Paraspinal tenderness was present with rigidity and guarding.  Tenderness was present in the lumbar spine with rigidity and guarding. Trigger points were present with taut bands and jump signs present.  Facet joint tenderness was present bilaterally, more severe on the right compared to the left.  Twisting, turning, extension, and flexion were painful.  Radiculopathy of bilateral lower extremities. Sacroiliac joint tenderness was present bilaterally.  Gaenslen's and Patrick's signs were positive.  Neurological exam showed cranial nerves were intact.  Sensation in the left lower extremity was decreased.  Power in the upper and lower extremities was 5/5 bilaterally.  (AR 1160.)  Straight leg raise was positive on the left. (AR 1160-61.)  Reflexes were 0+ in the lower extremities and 1+ in the upper extremities.  Plaintiff was given a back brace to reduce pain by restricting mobility of the truck and to support weak spinal muscles.  (AR 1161.)

On May 15, 2017, Plaintiff was seen by Dr. Moalemi complaining of tremors in her head and hands for the past two months.  Examination noted back tender to palpation over lumbar-sacral spine; straight leg testing positive bilaterally; right hip tender to palpation; normal gait and motor strength in the upper and lower extremities; sensory exam intact, tremor present in bilateral upper

1   extremities when holding them out, and cranial nerves 2-12 grossly intact.  (AR 645.)

2       Plaintiff was seen by Dr. Maolemi on May 31, 2017, complaining that her tremors had

3   worsened since her last visit.  She had not been taking Flexeril.  (AR 649.)  She had normal motor

4   strength in the upper and lower extremities, normal strength and tone, and cranial nerves 2-12 were

5   grossly intact.  (AR 650.)

6       On June 15, 2017, Plaintiff saw Dr. Mai reporting right groin and hip pain.  (AR 581.)

7   Examination noted right hip with groin pain on exam, some pain with range of motion in the hips

8   with no LLD or instability, no swelling or deformity.  An MRI of the right hip showed a possible

9   labral tear and she was advised that she might need a right hip arthroscopy.  (AR 582.)

10      On June 21, 2017, Plaintiff was seen by Dr. Moalemi for MRI results due to the worsening

11  of her hand and head tremors.  She complained of some weakness which she attributed to her right

12  hip pain and lumbar stenosis.  Examination notes normal gait and motor strength in the upper and

13  lower extremities.  Sensory exam was intact.  Tremor was present in the upper extremities when

14  holding them out.  Cranial nerves 2-12 were grossly intact.  (AR 653.)

15      On September 1, 2017, Plaintiff saw Dr. Grandhe reporting relief for one- or two-days

16  following trigger point injections on July 14, 2017.  Examination notes that the cervical spine was

17  tender with rigidity and guarding present.  Paraspinal tenderness was present with bilateral radicular

18  pain.  Suprascapular area tenderness was present.  Occipital area and lumbar tenderness were

19  present with rigidity and guarding and bilateral radicular pain.  (AR 587.)

20      Plaintiff was seen at Indian Health on September 19, 2017, complaining of dizziness that had

21  started four days prior.  She also reported muffled ear sounds on the left knee and numbness of the

22  right jaw.  (AR 675.)  Examination was unremarkable with back exam showing full range of motion

23  with a normal exam of the spine.  (AR 675-76.)  Musculoskeletal exam noted normal cervical spine

24  with full range of motion.  Extremity exam noted good capillary refill in nail beds with no clubbing,

25  cyanosis or edema.   (AR 676.)

26      Plaintiff saw Dr. Maurice-Diya on October 24, 2017, complaining of radicular neck pain to

27  her right shoulder and lower back that radiates to her right hip area and is rated at 10/10.

28  Examination  notes  cervical  tenderness  was  present  with  rigidity  and  guarding.  Paraspinal

tenderness was present. Cervical trigger points were present with jump signs and taut bands.  Right suprascapular tenderness was present.  Lumbar tenderness was present with rigidity and guarding.  Paraspinal tenderness was present. Right trochanteric tenderness was present with trigger points with jump signs and taut bands positive.  (AR 1152.)

On November 6, 2017, Dr. Moalemi completed the physical medical source statement that is at issue in this appeal. (AR 1451-53.)

On January 31, 2018, Plaintiff was seen in the emergency room complaining of a respiratory cough.  (AR 1418.)   Neck examination notes normal range of motion with a supple neck.  Musculoskeletal examination notes normal range of motion, with no edema, tenderness, or deformity.  (AR 1420.)  Coordination and muscle tone were normal.  (AR 1421.)

On March 5, 2018, Plaintiff was seen by Dr. Kumar and stated her main concern was chronic low back pain with bilateral radiculopathy and chronic neck pain secondary to degenerative joint disease.  (AR 1262.)  Examination of the neck and shoulders reports positive tenderness of the paraspinal muscles in the C-spine with stiffness and decreased range of motion in flexion and extension.   Plaintiff had mild enlargement and stiffness of her trapezius muscles bilaterally.  Examination of the back reports decreased range of motion, no costovertebral angle tenderness, tender to palpation over the lumbar-sacral spine and paraspinal muscles left more than right.  She had positive single leg raising on the left side but no "e/o fnds".  Range of motion was painful at the lower spine.  (AR 1263.)

Plaintiff was seen by Physicians Assistant Brown on March 28, 2018, for a neuro evaluation after an MRI of the cervical spine showed herniated disks.  Plaintiff complained of tremors in her face and arms for years and intermittent numbness in her bilateral upper extremities and weakness in her bilateral hands. (AR 1278.)  Upper extremity examination showed sensory was intact to light touch and motor of 5/5 bilaterally. Strength was 5/5 and there was negative Hoffman's bilaterally.  Lower extremity examination shows sensory was intact to light touch and motor was 5/5 bilaterally.  Strength was 5/5 bilaterally.  (AR 1279.)  Clonus was negative.  No surgical intervention was planned.  (AR 1280.)

On April 19, 2018, Plaintiff was seen by Dr. Maurice-Diya following a nerve block and

trigger point injections.  Examination of the cervical spine showed tenderness present at palpation.  Trigger points with taut bands and jump signs are present with paraspinal muscle tenderness.  The right suprascapular nerve was tender.  Lumbar spine examination showed tenderness present with palpation.  The paraspinal muscles were tender.  Trigger points with taut bands and jump signs were present.  Bilateral sacroiliac joints were tender. Gaenslen's signs and Patrick's signs were positive.  (AR 1150.)

On July 26, 2018, Plaintiff was seen by Dr. Maurice-Diya after having cervical, lumbar and thoracic trigger point injections on July 3, 2018.  Examination notes cervical spine tenderness is present.  Bilateral trigger points are present with taut bands and jump signs.  Bilateral radicular symptoms are present.  Facet joints are tender.  Shoulder exam showed bilateral acromioclavicular joint tenderness with pain on the right worse than the left.  Right suprascapular tenderness was present.  Range of motion was normal.  Lumbar area tenderness was present.  Paraspinal tenderness, rigidity, and guarding are present.  Bilateral radicular symptoms are present.  Facet joints are tender.  Left sacroiliac joint tenderness was present with positive Gaenslen's and Patrik's signs.  Twisting, turning, extension, and flexion were painful.  (AR 1145.)

On November 26, 2018, Plaintiff was seen by Dr. Kadel for a follow up.  Examination notes show an unremarkable examination, other than an antalgic gait is noted.  (AR 1639.)

Plaintiff saw Dr. Rasmussen on March 1, 2019, reporting that her tremors are consistent, not better and not worse.  She reported weakness in her hands as well as numbness and tingling in her hands and arms.  (AR 1579.)  Neurologic exam notes cranial nerves 2 through 12 were grossly intact.  She had a mild tremor of face and bilateral hands.  There were diminished reflexes bilaterally in the upper and lower extremities.  (AR 1583.)

Plaintiff was seen by Physicians Assistant Esters on March 7, 2019, for her lumbar pain.  (AR 1883.)  Examination notes that thoracolumbar spine range of motion was abnormal at 45 degrees true flexion, 10 degrees extension, 15 degrees right lateral flexion, 20 degrees left lateral flexion, 10 degrees right rotation, 10 degrees left rotation.  (AR 1884.)  Reverse Thomas test and Patrik's test were positive bilaterally.   Sitting straight leg raising was negative bilaterally.  Sitting straight leg in the supine position showed 90 degrees negative bilaterally.  There was no clonus.

Babinski signs were negative bilaterally.  Neurological examination of the ankles and knees were 2+ bilaterally.  Sensation in the dermatomes was normal bilaterally.  Hip adduction was 5/5 bilaterally, hip abduction was 4/5 bilaterally.  Hip extension, hip flexion, knee extension, knee flexion, and ankle plantar flexion were 5/5 bilaterally.  Ankle dorsiflexion was 4/5 bilaterally. Palpation over the lumbar facet joints noted pain bilaterally.  Ulnar stretch test, median stretch test, Adson test, and Spurling test were all negative.  (AR 1885.)

On March 8, 2019, Plaintiff was seen Nurse Practitioner Villegas.  (AR 1461.) Musculoskeletal examination showed normal range of motion with normal strength and tone.  (AR 1462.)

On June 25, 2019, Plaintiff had an internal medicine evaluation by Dr. Damania.  (AR 1132-36.)  Back examination notes some tenderness to left lumbar muscles with straight leg raising negative at 90 degrees.  Laseques's sign was negative.  There were no muscle spasms.  She stated it was too painful to do range of motion testing.  Examination of the extremities notes she declined to do range of motion testing for her right shoulder, all other range of motion is within normal limits.  Her right hip was slightly tender on palpation. (AR 1135.)  Cranial nerves 2 through 12 were grossly intact, motor strength was 5/5 in all extremities with good tone bilaterally and good active range of motion.  Sensation was grossly intact throughout.  Reflexes were normal and symmetric bilaterally at 2+ with no clonus.  When she was told to extend her head there were some tremors and Dr. Damania noticed shaking of her head once.  Her gait was within normal limits, and she did not use an assistive device.  She did appear to be in pain toward the end of the examination.  (AR 1136.)

On July 12, 2019, and December 17, 2019, Plaintiff saw Physician's Assistant Esters who noted that gait and station were within normal limits.   Range of motion for the cervical spine was abnormal at 20 degrees of flexion, 10 degrees of extension, 65 degrees of right rotation, 60 degrees of left rotation, 40 degrees of right lateral flexion and 30 degrees of left lateral flexion.  Plaintiff had pain with cervical spine range of motion testing.  Upper extremity neurological examination notes 5/5 motor to the elbow, hands, and wrists bilaterally.  Sensation was normal.  Reflexes were 1+ or 2+ bilaterally, Babinski and Hoffman's signs were negative bilaterally and there was no

clonus.  There was no tenderness to palpation over the biceps tendon, supraspinatus tendon, or AC joint.  There was tenderness to palpation over the cervical paraspinals and the trapezius.  Ulnar stretch test, median stretch test, Adson test, and Spurling test were all negative.  Thoracolumbar spine range of motion was abnormal at 45 degrees true flexion, 10 degrees extension, 15 degrees right lateral flexion, 20 degrees left lateral flexion, 10 degrees right rotation, 10 degrees left rotation, and there was pain with lumbar spine range of motion testing.  Sitting straight leg raising was negative bilaterally.  Sitting straight leg in the supine position showed 90 degrees negative bilaterally.  Reverse Thomas test and Patrik's test were positive bilaterally.  There was no clonus. Babinski signs were negative bilaterally.  Neurological examination of the ankles and knees note 2+ bilaterally.  Sensation in the dermatomes was normal bilaterally.  Hip adduction was 5/5 bilaterally, hip abduction was 4/5 bilaterally.  Hip extension, hip flexion, knee extension, knee flexion, and ankle plantar flexion were 5/5 bilaterally.  Ankle dorsiflexion was 4/5 bilaterally. Palpation over the lumbar facet joints noted pain bilaterally.  (AR 1860, 1873.)

Plaintiff was seen by Dr. Parveez on March 4, 2020, and June 4, 2020, for a follow up on her abnormality of globulin.  (AR 2588, 2731.)  Examination findings show the neck is supple with no cervical masses present.  Trachea is midline and there is no thyromegaly.  Extremity examination records no edema, no digital clubbing, no cyanosis, and no discoloration.  There is normal range of motion, strength, and tone on musculoskeletal examination.  (AR 2588, 2733.)

On August 14, 2020, and September 16, 2020, Plaintiff was seen by Physician's Assistant Esters complaining of neck pain going down to her lower back.  (AR 2441 3105.)  On examination, gait and station are noted to be within normal limits.   Range of motion for the cervical spine was abnormal at 20 degrees of flexion, 10 degrees of extension, 65 degrees of right rotation, 60 degrees of left rotation, 40 degrees of right lateral flexion and 30 degrees of left lateral flexion.  Plaintiff had pain with cervical spine range of motion testing.  (AR 2444, 3107.)   Upper extremity neurological examination notes 5/5 motor to the elbow, hand and wrists bilaterally.  (AR 2444, 3107-08.)  Sensation was normal.  Reflexes are 1+ or 2+ bilaterally, Babinski and Hoffman's signs are negative bilaterally and there is no clonus.  There is no tenderness to palpation over the biceps tendon, supraspinatus tendon, or AC joint.  There is tenderness to palpation over the cervical

paraspinals and the trapezius.  Ulnar stretch test, median stretch test, Adson test, and Spurling test are all negative.  Sitting straight leg raising was negative bilaterally. Sitting straight leg in the supine position showed 90 degrees negative bilaterally on August 14 and 60 degrees on the left, 45 degrees on the right and was negative bilaterally on September 16.  Reverse Thomas test and Patrik's test were positive bilaterally.  On September 16 slump test was negative.  There was no clonus. Babinski signs were negative bilaterally.  Neurological examination of the ankles and knees were 2+ bilaterally.  Sensation in the dermatomes was normal bilaterally.  Hip adduction was 5/5 bilaterally, hip abduction was 4/5 bilaterally.  (AR 2445, 3108.)  Hip extension, hip flexion, knee extension, knee flexion, and ankle plantar flexion were 5/5 bilaterally.  Ankle dorsiflexion was 4/5 bilaterally.  Palpation over the lumbar facet joints noted pain bilaterally.  (AR 2445, 3108.)

On October 29, 2020, Plaintiff was seen by Dr. Parveez for a follow up on her abnormality of globulin. (AR 2719.)  Physical examination notes neck is supple with no cervical masses present. Trachea is midline and there is no thyromegaly.  Extremity exam shows no edema, no cyanosis, no digital clubbing, and no discoloration.  Musculoskeletal examination shows normal range of motion, strength, and tone are normal.  (AR 2721.)

Plaintiff was seen on November 6, 2020, for her annual examination.  (AR 2875.) Musculoskeletal examination shows no swelling or deformity of any joints or extremities. Extremity examination noted no clubbing, cyanosis, or edema with full range of motion. Neurologic examination noted cranial nerves 2-12 were grossly intact, gait was normal, motor strength was normal to the upper and lower extremities, there was no rigidity and no tremor.  There was decreased sensation to the inner right thigh "OTW silt."  (AR 2876.)

On December 3, 2020, Plaintiff was seen by Physician's Assistant Esters complaining of neck pain going down to her lower back.  (AR 2420.)  On examination, gait and station are noted to be within normal limits.   Range of motion for the cervical spine was abnormal at 20 degrees of flexion, 10 degrees of extension, 65 degrees of right rotation, 60 degrees of left rotation, 40 degrees of right lateral flexion and 30 degrees of left lateral flexion.  Plaintiff had pain with cervical spine range of motion testing.  Upper extremity neurological examination notes 5/5 motor to the elbow, hand and wrists bilaterally.  Sensation was normal.  Reflexes are 1+ or 2+ bilaterally, Babinski and

Hoffman's signs are negative bilaterally and there is no clonus.  There is no tenderness to palpation over the biceps tendon, supraspinatus tendon, or AC joint.  There is tenderness to palpation over the cervical paraspinals and the trapezius.  Ulnar stretch test, median stretch test, Adson test, and Spurling test are all negative.  Sitting straight leg raising in the supine position was 60 degrees on the left, 30 degrees on the right and negative bilaterally. Sitting straight leg raising was negative bilaterally.  Slump test was negative and Patrik's test was positive bilaterally.  There was no clonus. Babinski signs were negative bilaterally.  Neurological examination of the ankles and knees were 2+ bilaterally.  Sensation in the dermatomes was normal bilaterally.  Hip adduction was 5/5 bilaterally, hip abduction was 4/5 bilaterally.  (AR 2423.)  Hip extension, hip flexion, knee extension, knee flexion, and ankle plantar flexion were 5/5 bilaterally.  Ankle dorsiflexion was 4/5 bilaterally.  Palpation over the lumbar facet joints noted pain bilaterally.  (AR 2424.)

Plaintiff was seen on May 3, 2021, for a follow up on her diabetes myelitis.  (AR 2856.) Musculoskeletal examination notes slightly decreased range of motion with tightness, especially in her back. Extremity examination noted no clubbing, cyanosis, positive edema, and joint hypertrophy.  Neurological examination notes the cranial nerves 2-12 are grossly intact with no rigidity and no tremor.  (AR 2857.)

**D.    Whether the ALJ's Opinion is Supported by Substantial Evidence and Free of Error**

1.    The ALJ did not err by ignoring significant object evidence

The Court first considers Plaintiff's argument that the ALJ focused on benign findings while ignoring evidence that demonstrates she has more functional limitations.  The ALJ would err by ignoring significant objective evidence from other medical and nonmedical sources in the record that are consistent with the medical opinion rejected.  Thompson v. Comm'r of Soc. Sec., No. 2:20-CV-3-KJN, 2021 WL 1907488, at *6 (E.D. Cal. May 12, 2021); see also Ghanim v. Colvin, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (some period of improvement does not mean the impairment no longer serious affects the claimant's ability to work; the medical record must be read in context of the overall diagnostic picture the provider draws); Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. 2014) (ALJ erred by singling out a few periods of temporary well-being from a sustained period

1  of impairment).

2      Plaintiff points to specific evidence that she contends the ALJ ignored that shows her

3  impairments are more serious than found by the ALJ.  First, Plaintiff cites an MRI of the lumbar

4  spine on January 21, 2017 that documented findings "at T12-L1 there is a trace broad bilobed

5  posterior disc bulge with trace flattening of the ventral CSF space; at L4-5 there is exuberant facet

6  arthropathy and ligamentum flavum hypertrophy; there are small bilateral facet joint effusions seen,

7  right greater than left; this is in conjunction with a mild annular disc bulge; there may be some new

8  trace 1-2 mm anterolisthesis of L4 relative to L5; mild spinal stenosis due to facet arthropathy and

9  ligamentum flavum hypertrophy in conjunction with the annular disc bulge visually appears similar;

10 there is some mild bilateral inferior foraminal narrowing; at L5-S1 marked facet arthropathy and

11 ligamentum flavum hypertrophy left greater than right; asymmetric left sided ligamentum flavum

12 hypertrophy indents into the left dorsal CSF space, narrows the left lateral recess, and abuts the

13 central the central left S1 nerve root; and minimal inferior bilateral foraminal narrowing left greater

14 than right." (Mot. 27 (AR 691-692).)

15      However, the ALJ did acknowledge these findings in his opinion.  This MRI was specifically

16 referenced in the finding, "on January 21, 2017, imaging of Plaintiff's lumbar spine was taken and

17 revealed disc bulge at L4-5, L5-S1 anterolisthesis, arthropathy, and ligamentum flavum

18 hypertrophy.  (AR 26, 588, 592-93, 691-92.) The ALJ did not neglect to cite or consider this MRI.

19      Similarly, Plaintiff argues that the ALJ ignored the MRI of her hip on April 28, 2017, an

20 MRI of the thoracic spine on July 28, 2017, and an MRI of the cervical spine on July 27, 2017.

21 (Mot. 27.)   In his opinion, the ALJ did find that in mid-2017 it was noted that imaging of her hip

22 showed a possible labral tear, and she might need to undergo a hip arthroplasty.  (AR 26, 582.)

23 Further, the ALJ did cite to and consider these MRIs in referencing that additional imaging of

24 Plaintiff's cervical spine was taken and noted anterior ligament calcification with minimal

25 spondylosis and no acute process seen.  (AR 26, 682, 685.)  The ALJ also considered the MRI of

26 the thoracic spine noted minimal disc bulges and anterolisthesis, and no canal stenosis or foraminal

27 narrowing.  (AR 26, 684.)  The ALJ did not neglect to cite or consider the MRIs of Plaintiff's hip

28 or spine.

Lastly, Plaintiff argues that a physical therapy note, dated January 9, 2018, documents that she continued to have low back and bilateral hip pain, and examination findings document deficits in her range of motion, positive leg raising, positive testing and increased pain to palpation on her spine.  (Mot. 28.)  The ALJ did note that on November 10, 2016, Plaintiff was seen for an initial physical therapy assessment reporting that she has 10/10 back and groin pain since October 15, 2016.  She is noted to show severe limitations in range of motion, strength, and functional mobility to perform walking, standing, sitting, transfer to a car, and lay supine.  (AR 566.)  Plaintiff asserts error due to the failure to consider and reference a recertification note on January 9, 2018.  This note states,

> Ms IGASAN continues to demonstrate slow but steady improvement with range of motion, pain, and strength due to physical therapy.  She is able to tolerate mild strengthening activities and is able to tolerate weight bearing activities longer without aggravating her symptoms.  She continues to be limited in prolonged ambulation and sitting, decreased active/passive range of motion secondary to increased low back pains, and pain to palpation along the low back and piriformis/glut musculature.  She will continue to benefit from physical therapy to continue to increase AROM, strength, decrease pain, and increase function without aggravation of her symptoms.

(AR 1049.)

In his opinion, the ALJ noted numerous records containing similar findings of decreased range of motion, positive testing, positive straight leg raising, and pain to palpation.  (See AR 27, 582, 587, 645, 636, 1135-36, 1145, 1150, 1152, 1160-61, 1263, 1860, 1873, 1884-85, 2423-24, 2444-45, 3107-08.)  The Court cannot find that the failure to comment on this physical therapy note would be a misrepresentation of the record given the ALJ's recognition of the similar findings of numerous other providers in the record.  The Court finds that the ALJ did not err by ignoring significant objective evidence from other medical and nonmedical sources in the record that are consistent with the medical opinion rejected.  Thompson, 2021 WL 1907488, at *6.

Plaintiff's argument that there is a plethora of evidence to support Dr. Maolemi's opinion is seeking for this Court to review the evidence and come to an alternate conclusion.  It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch, 400 F.3d at 679.

1    2.    The ALJ properly considered the opinion of Dr. Maolemi

2         The Court next considers Plaintiff's argument that the ALJ erred by ignoring evidence that

3    supports Dr. Maolemi's opined limitations.

4         On November 6, 2017, Dr. Moalemi completed a physical medical source statement. (AR

5    1451-53.)  He stated he had been seeing Plaintiff since July 2, 2015, and she has been diagnosed

6    with tremor, right hip bursitis, and lumber stenosis.  Her prognosis is fair.  She has a tremor, right

7    hip pain due to a labral tear, and leg weakness.  The clinical findings and objective signs identified

8    essential tremor, doctor's examinations, and right hip tenderness.  He noted that Plaintiff is currently

9    being evaluated by neurology, received steroid injections for hip pain, medication that can cause

10   dizziness, physical therapy, and interventional pain management.  Her impairments have or can be

11   expected to last 12 months and emotional factors contribute to the severity of her symptoms and

12   functional limitations.  (AR 1451.)

13        Dr. Moalemi opined that Plaintiff can walk one half block without rest or severe pain, can sit

14   10 minutes before having to get up and stand 5 minutes before having to sit down or walk around.

15   She can sit, stand/walk less than 2 hours in an 8-hour day.  She would require a job that permits

16   shifting positions from sitting, standing, walking.  (AR 1451.)  She would need a job that permits

17   walking around during an 8-hour workday.  She must walk for 10 minutes every 10 minutes.  She

18   would require six twenty-minute unscheduled breaks during a workday due to muscle weakness,

19   chronic fatigue, and pain/paresthesia/numbness.  She requires her legs to be elevated to waist level

20   with prolonged sitting.  Her legs would need to be elevated seventy five percent of the time if she

21   were to have a sedentary job.  She requires the use of a cane or other assistive device for occasional

22   standing or walking due to imbalance, insecurity, pain, and weakness.  (AR 1452.)

23        Dr. Moalemi opined that Plaintiff can rarely lift and carry less than ten pounds.  She can

24   rarely twist and can never stoop, bend, crouch, squat, climb stairs, or climb ladders.  (AR 1452.)

25   She has no limitations in reaching, handling, or fingering.  Contrarily, Dr. Moalemi stated that

26   Plaintiff can grasp, turn and twist objects with her hands 10 percent of an 8-hour workday; can do

27   fine manipulation with her fingers 20 percent of an 8-hour workday; can reach in front of her body

28   with her arms 40 percent of an 8-hour workday; and can reach overhead 20 percent of an 8-hour

workday.  (AR 1452.)

He opined that Plaintiff would likely be off task more than 25 percent of the day due to symptoms interfering with concentration and attention.  She is capable of low stress work based on her answers.  She is likely to have good and bad days.  If she was trying to work fulltime, she would likely be absent from work more than five days per month due to her impairments or treatment.  Dr. Moalemi noted that "[t]hese answers are mostly based on patient's subjective answers as I do not have any training in occupational/disability medicine."  (AR 1453.)

As stated above, the most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).  Here, the ALJ found that Dr. Moalemi's opinion was not supported by a detailed explanation or the objective findings.  (AR 29.) Dr. Moalemi's opinion itself states that the answers are mostly based on Plaintiff's subjective complaints providing substantial support for the ALJ's findings.  (AR 1453.)  Additionally, the ALJ pointed to Dr. Moalemi's examinations of Plaintiff which, despite finding tenderness in her spine, noted a normal gait, normal motor strength in the upper and lower extremities, and an intact sensory examination.  (AR 636, 645, 653.)  Similarly, notes from the clinic record similar findings with normal range of motion in the back and cervical spine (AR 676), gait and station within normal limits and generally normal strength in the lower extremities and sensation despite pain upon palpation and some limitations in range of motion in the spine (AR 1873, 1884-85, 2423-24, 2444-45), and normal gait with full range of motion to all extremities and normal motor strength to the upper and lower extremities (AR 2877).

Additionally, the ALJ found that Dr. Moalemi's opinion was not consistent with the record as a whole which largely noted a normal gait; full cervical range of motion; no cervical tenderness; negative straight leg raises; no clubbing, cyanosis, or edema; normal range of motion; normal strength in the upper and lower extremities; no hip instability, swelling or deformity; normal muscle tone; no swelling or deformity of joints; intact sensation; and normal grip strength.  (AR 29.)  The ALJ pointed to examinations finding no hip instability despite her hip pain (AR 582); no findings other than tenderness to the spine (AR 587); normal range of motion and power in the upper and

lower extremities despite findings of tenderness, rigidity and guarding (AR 589, 1135-36); normal gait and stance (AR 697, 962); sensory intact to light touch and motor of 4 to 5/5 bilateral to the upper and lower extremities (901, 1279); normal muscle tone and coordination (AR 1421); and normal range of motion, strength, and tone (AR 2721, 2733).

The Court finds that the ALJ properly considered Dr. Moalemi's opinion consistent with 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5), and that the ALJ's reasoning for rejecting the limitations opined by Dr. Maolemi are supported by substantial evidence in the record.  Accordingly, Plaintiff's motion for summary judgment on this ground shall be denied.

> 3.    The ALJ did not engage in interpretation of raw medical evidence

Finally, Plaintiff argues that the ALJ erred by rejecting to some extent every medical opinion in the record and engaged in his own interpretation of the raw medical evidence.  Here, the ALJ found several medical opinions and prior administrative medical findings to be persuasive but included additional limitations to account for Plaintiff's subjective complaints and the findings during medical examination as discussed below.

The ALJ found that the opinions of the State agency medical consultants, Laurence Ligon, M.D., and Julie Chu, M.D., were partially persuasive.  (AR 28.)  The ALJ found the opinion of Dr. Ligon at the initial level (AR 122-25) was unpersuasive because the assessed limitations were not supported by the evidence that was available at the time of the assessment.  (AR 28.)  The ALJ found that the opinion of Dr. Chu at the reconsideration level was more persuasive.  (AR 28, 141-44.)  Dr. Chu opined that Plaintiff was able to occasionally lift and carry 20 pounds and frequently lift and carry 20 pounds; could stand and or walk 6 hours in an 8-hour day; could sit 6 hours in an 8-hour day; and was unlimited in push and or pull other than the lift and carry limits.  (AR 142-43.)  Plaintiff could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and balancing was unlimited.  Plaintiff had no manipulative, visual, or communicative limitations.  (AR 143.)  Plaintiff should avoid concentrated exposure to working at unprotected heights, working around dangerous machinery, and walking on uneven terrain.  (AR 144.)

However, in finding Dr. Chu's opinion persuasive, the ALJ found that the record as a whole

including Plaintiff's subjective complaints and exams noting hand tremors, decreased sensation, edema, and joint hypertrophy support the finding that she has more postural and manipulative limitations than those assessed.  (AR 28, 1160, 2857, and hearing testimony.)

The ALJ considered that Plaintiff underwent a physical examination with Dr. Damania in June of 2019, and found the opinion to be persuasive.  (AR 29, 1132-42).  Dr. Damania opined that Plaintiff was able to lift and carry 20 pounds frequently and 50 pounds occasionally and could sit, stand, and walk 8 hours in an 8-hour workday.  (AR 1137.)  Plaintiff did not need a cane to ambulate. (AR 1138.)  She could never reach with her right hand due to right shoulder pain, but could frequently handle, finger, feel, and push/pull with the right hand.  She could frequently reach, handle, finger, feel, and push/pull with her left hand.  Plaintiff is lefthanded.  Plaintiff can frequently operate foot controls.  (AR 1139.)  She can never climb ladders or scaffolds; occasionally climb ramps and stairs; and frequently balance, stoop, kneel, crouch, and crawl.  She has no impairment of hearing or vision. (AR 1140.)  She could frequently tolerate moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes and pulmonary irritants; extreme cold and heat; vibrations; and loud noise; but can never tolerate exposure to unprotected heights.  (AR 41.)

The ALJ assessed additional limitations to account for Plaintiff's examinations noting bilateral cervical trigger points, decreased cervical range of motion, an antalgic gait, positive straight leg raises, decreased range of motion and strength, trigger points, edema and joint hypertrophy, painful hip range of motion, right hip tender to palpation, paraspinal tenderness, decreased spinal range of motion, mild tremor of hand and face, and lower extremity decreased sensation.  (AR 29, 567, 582, 645, 1135, 1145, 1150, 1160, 1263, 1462, 1583, 1639, 1860, 1873, 2857, 2877, 3107.)

An ALJ is capable at some level "of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022).  It is the responsibility of the ALJ to translate and incorporate clinical findings into a succinct RFC.  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (citing Stubbs–Danielson v. Astrue, 539 F.3d

1   1169, 1174 (9th Cir.2008)).  Even when reviewing new medical evidence that ALJ need not seek

2   the opinion of a medical expert to make an RFC determination.  Bufkin v. Saul, 836 F. App'x 578,

3   579 (9th Cir. 2021).

4        Plaintiff cites to Pilgreen v. Berryhill, 757 F. App'x 618 (9th Cir. 2019), to argue, "An ALJ may

5   not substitute her own lay opinion for the judgment of medical professionals."  (Mot. 29.)  In Pilgreen,

6   the ALJ rejected a physician's conclusions finding they were "not fully supported by her own findings."

7   Pilgreen, 757 F. App'x at 619.  The Ninth Circuit found that the substance of the ALJ's criticism

8   concerned the extent of the physician's testing and her interpretation of the results.  Id.  They held the

9   ALJ's assessment of a physician's methodology and interpretation was not supported by any medical

10  evidence, and the ALJ was not free to substitute his own lay opinion.  Id.

11       However, here, the ALJ did not reject the opinions of the physicians that he found to be

12  persuasive, rather he selected limitations from each opinion and imposed additional limitations to

13  account for Plaintiff's complaints of pain and the medical findings in the record.  The ALJ adopted Dr.

14  Chu's postural limitations in full except that he found that Plaintiff could only lift 10 pounds frequently

15  rather than the 20 pounds opined by Dr. Chu.  The ALJ adopted the postural and manipulative

16  limitations opined by Dr. Damania.  Accordingly, the only additional limitation included in the RFC is

17  that Plaintiff can only lift 10 pounds frequently rather than the 20 pounds opined by Drs. Chu and

18  Damania.  The ALJ did not err by interpreting raw medical data in developing Plaintiff's RFC.

19       Further, even had there been error, Plaintiff has not shown how she was prejudiced by the ALJ

20  imposing a limitation of lifting and carrying 10 pounds frequently rather than the 20 pounds opined by

21  the physicians.  The Court finds that the ALJ's opinion is supported by substantial evidence and free of

22  legal error.  Accordingly, Plaintiff's motion for summary judgment shall be denied.

## V.

## CONCLUSION AND ORDER

25       In conclusion, the Court denies Plaintiff's Social Security appeal and finds no harmful error

26  warranting remand of this action.

27       Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

28  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

1 | entered in favor of Defendant Commissioner of Social Security and against Plaintiff Cynthia Marie

2 | Igasan.  The Clerk of the Court is directed to CLOSE this action.

3 |

4 | IT IS SO ORDERED.

5 | Dated:   __**March 15, 2024**__

  | _____
  | UNITED STATES MAGISTRATE JUDGE

6 |
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |